IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

IN THE MATTER OF AN ARREST WARRANT FOR:

JESSE M. SMITH
67782 HOOVER ROAD
QUAKER CITY, OHIO 43773

Case No. 1:16 MJ 2169

**AMENDED REDACTIONS**

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Robert Springer, (hereinafter referred to as your Affiant) being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this affidavit in support of an arrest warrant for JESSE M. SMITH.

2. Affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that Affiant is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code (U.S.C.).

3. Your Affiant has been assigned as a Task Force Officer with the Cleveland Division of the FBI since June 2014. In addition to serving as a TFO with the FBI, your Affiant has been employed as a Special Agent by the United States Department of Agriculture, Office of the Investigator General, (USDA-OIG), for approximately seven (7) years. Your Affiant has been assigned to the Cleveland Sub-Office of the USDA-OIG since October 2009. Your Affiant has approximately 16 years of law enforcement experience. From 2000 until 2004 your Affiant

worked as a probation officer with the Cuyahoga County Probation Department. From 2004 until 2008 your Affiant worked as a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Indianapolis Division of the FBI. While being trained as a Special Agent of the FBI, your Affiant completed a 17-week special agent training in Quantico, Virginia. While employed with the FBI, your Affiant was assigned to both the Safe Streets Task Force (SSTF) and Joint Terrorism Task Force (JTTF). Your Affiant was responsible for investigating individuals involved with drug trafficking, money laundering and other criminal violations. Additionally, while employed as a Special Agent with the FBI, your Affiant served as the Chief Division Counsel for the Indianapolis Division from October 2007 until January 2008. Further, your Affiant has received specialized training in the methods criminal enterprises utilize telephones to further their criminal activities.

4. From 2008 until October 2009, your Affiant was employed as an Assistant Prosecuting Attorney with the Cuyahoga County Prosecutor's office. As a Special Agent with both the FBI and USDA-OIG your Affiant has participated in numerous investigations involving mail fraud, wire fraud, money laundering, food stamp/Supplemental Nutrition Assistance Program (SNAP) fraud, Women, Infant and Children (WIC) benefits fraud, mortgage fraud, bank fraud, fraud involving farm loans, and other financial crimes. Your Affiant has received specialized training regarding the fraudulent use of access devices, wire fraud schemes, asset forfeiture, money laundering violations, and financial crimes investigations. Your Affiant has written and/or executed over 35 federal search warrants which have resulted in the seizure of illegal drugs, seizure of assets and/or evidence of money laundering. Your Affiant has written, executed or reviewed over 25 seizure warrants which have resulted in the seizure of assets derived from the proceeds of criminal activities.

5. This affidavit is intended to establish the existence of sufficient probable cause for the requested warrant and does not set forth all of your Affiant's knowledge about this matter. The facts set forth in this affidavit are based upon your Affiant's personal knowledge, together with other reliable information communicated to your Affiant from other law enforcement officials familiar with the facts and circumstances of subject investigation.

6. Information concerning JESSE M. SMITH and Top Secret Livestock discussed below have been obtained from a review of the following:

   a. Information received by Affiant, other FBI Special Agents and other law enforcement personnel assigned to this and to related investigations,

   b. Reports and briefings from State and Local Agencies,

   c. Surveillance logs detailing physical activities, meeting sites, and vehicles used related to individuals identified in this investigation,

   d. ~~Title III wiretap of the following telephone lines:~~

      i. Telephone Number ███████ utilized by ███████ monitored from March 9, 20016 to April 8, 2016 and from April 27, 2016 to May 27, 2016.

      ii. Telephone number ███████, utilized by ███████ monitored from March 9, 2016 to April 8, 2016.

      iii. Telephone number ███████ utilized by ███████ monitored from March 9, 2016 to April 8, 2016.

      iv. Telephone number ███████, utilized by ███████ monitored from April 27, 2016 to May 27, 2016 and June 30, 2016 to July 20, 2016.

3

v. Telephone number ████████, utilized by ████████, monitored from April 27, 2016 to May 27, 2016 and June 30, 2016 to July 30, 2016.

**PROBABLE CAUSE**

7. In or about March 2015, the USDA-OIG and FBI initiated an investigation into the money laundering and wire fraud schemes organized and executed primarily by Amin Salem, (Salem), his son Mohamed Salem, (Mohamed), Mahmoud Abukhalil (Abukhalil), Bernard Whiting (Whiting), JESSE SMITH (SMITH) and others (hereinafter referred to as the Salem Enterprise). Salem has, over time, built a Cleveland-area enterprise of gas stations, restaurant, and farms that illegally process livestock, illegally process Supplemental Nutrition Assistance Program benefits (SNAP), formerly food stamp benefits, traffic in untaxed tobacco products, traffic in illegally processed and diseased meat and meat products, and purchase stolen property. The Salem Enterprise launders the proceeds of their illegal activities through the businesses they control.

8. Salem has a long history of money laundering and trafficking of food stamps and WIC program coupons. In 1992, Salem was convicted in the United States District Court for the Northern District of Ohio of Conspiracy to Traffic in Food Stamps, Theft of Public Funds, Counterfeiting and Tax Charges. Salem pleaded guilty and was sentenced to 42 months of incarceration following by Supervised Release. In response to this conviction, it appears that Salem began using other people to publically register his businesses, but in reality he maintained control over them.

9. In October 1999, Federal agents with the Food Stamp Task Force located in Cleveland, Ohio commenced a food stamp fraud and WIC fraud investigation into a store named, King Kennedy Sav-Mor, 6206 Woodland Avenue, Cleveland, Ohio. On May 23, 2000, search

4

warrants were executed at King Kennedy Sav-Mor. During the execution of the search warrant Sami Salem (Sami), Salem's brother, was present in the store and stated he was only a stock person and did not own or manage the store. The investigation revealed food stamp and WIC fraud in excess of $3,000,000. The owner listed for King Kennedy Sav-Mor was Romany Gaid, a straw owner. The investigation found that Salem and Sami were the true owners and were aware that WIC coupon trafficking was occurring. An analysis of bank records revealed monies moving between King Kennedy Sav-Mor bank accounts and two bank accounts controlled by Salem. The bank accounts controlled by Salem were placed in the name of Annie Salem (Annie), Salem's wife at the time of the investigation. An analysis of the bank accounts revealed Salem and Sami were using the monies to purchase gas stations and restaurants. The investigation also revealed that Salem and Sami made money from WIC coupon trafficking, helped find and pay for the attorneys of the employees being charged with WIC coupon trafficking, and paid an employee's wife's weekly salary when the employee was incarcerated.

10. In 2006, Salem was convicted in the United States District Court for the Northern District of Ohio of Conspiracy to Defraud the United States and to Commit Offenses Against the United States, Unlawful Food Stamp Redemption, WIC Fraud, and Mail Fraud. Salem was sentenced to 33 months incarceration followed by three years Supervised Release.

11. The investigation has revealed the Salem Enterprise controls/owns at least seven (7) gas stations and four (4) farm properties.

12. The gas stations are (1) Henry's Marathon, located at 3106 Fulton Road, Cleveland, Ohio; (2) Gas Way, located at 10606 Bellaire Road, Cleveland, Ohio; (3) Turney Sunoco, located at 6009 Turney Road, Garfield Heights, Ohio; (4) Harvard Gas USA, located at 7020 Harvard Ave, Cleveland, Ohio; (5) Bellaire Gas USA, located at 3934 West 117th Street,

Cleveland, Ohio; (6) Rapid Stop, located at 1712 East 55th Street, Cleveland, Ohio; (7) Memphis Shell, located at 7210 Memphis Avenue, Cleveland, Ohio.

13. The farm land includes 1) 43588 Stang Road, Elyria, Ohio; 2) a 7-acre farm located at 7250 West Ridge Road, Elyria, Ohio; 3) a 23-acre farm located at 9455 Leavitt Road, Elyria, Ohio, and 4) a 40-acre field adjacent to the Leavitt Road property, that bears Lorain County Permanent Parcel Number 09-00-000-600-014.

14. The investigation has revealed the Salem Enterprise is operating a slaughtering operation at 43588 Stang Road, Elyria, Ohio and 9417 Leavitt Road, Elyria, Ohio. The proceeds and expenses of the slaughtering operation are passed through corporate bank accounts controlled by the Salem Enterprise to conceal the source of the monies involved in the operation.

15. The slaughtering operation occurring at 43588 Stang Road, Elyria, Ohio and 9417 Leavitt Road, Elyria, Ohio are operating as a business involved in the slaughter and sale of animals for personal and commercial purposes. A review of Ohio Secretary of State records revealed the slaughtering operation is not incorporated nor does the operation maintain a business license. A check of Ohio Department of Agriculture and United States Department of Agriculture records revealed the slaughtering operation does not maintain a license to slaughter and sell animals. The byproducts of the slaughtering operation have flowed into the Engle Ditch, located on the property, 43588 Stang Road, Elyria, Ohio. A record check conducted by EPA-CID revealed that the slaughtering operation does not maintain a permit or license to discharge pollutants, including the by-products of the operation into the Engle Ditch or elsewhere.

16. On March 17, 2016, at approximately 12:04 PM, a search warrant signed by Judge James Gwin, United States District Court for the Northern District of Ohio was executed at 43588 Stang Road, Elyria, Ohio. The search warrant was executed seeking evidence of animal

slaughtering and environmental violations. At the time of the execution of the search warrant two lambs were being slaughtered by Whiting and Abukhalil.

17. The investigation has revealed that the Salem Enterprise has supplied slaughtered meat and meat products to Kan Zaman Restaurant, 1616 W. 25th Street, Cleveland, Ohio 44113; Kabab Station, 11901 Lorain Avenue, Cleveland, Ohio 44111; Olive Tree Food Corporation, 27189 Brookpark Road Extension, North Olmsted, Ohio 44070; Yahala Bakery and Grille, 4864 Dover Center Road, North Olmsted, Ohio 44070, and others known to law enforcement.

18. The investigation into the Salem Enterprise revealed that one of the main livestock suppliers for the slaughtering operation is SMITH, owner of Top Secret Livestock, LLC (Top Secret Livestock), 67782 Hoover Road, Quaker City, Ohio 43773. The Salem Enterprise purchased livestock through SMITH to conceal their volume of livestock they were purchasing.

19. On March 16, 2016 at approximately 5:14 p.m., the Mahmoud Abukhalil placed an outgoing call to Amin Salem. The conversation was in the Arabic language. A translation of the conversation revealed the following:

| | |
|---|---|
| Salem: | Where are you? |
| Abukhalil: | I am in the farm, what are you doing? |
| Salem: | Do you need a company? |
| Abukhalil: | How long does it take you? |
| Salem: | Go home, I am still in Pennsylvania. |
| Abukhalil: | Stop at the auction. |
| Salem: | It is better not to show our faces, I don't want to show my face there. How many is he going to bring? 100? |
| Abukhalil: | I have fifty. I do not know there is auction today and on Friday. |

20. Your Affiant and other law enforcement working this investigation believe this communication between Abukhalil and Salem was about Abukhalil telling Salem about the total



7

number of sheep he has on hand on the farm for slaughtering and about stopping at the animal auction located in Mt. Hope, Ohio where they purchase the live sheep for slaughtering. When Salem stated it is better not to show our faces, Salem was telling Abukhalil that neither Salem nor Abukhalil should go to the auction because they shouldn't be seen there.

21. The Articles of Incorporation for Top Secret Livestock were signed by SMITH on or about July 2, 2015, and approved by the Ohio Secretary of State on or about July 9, 2015. The Articles of Incorporation list SMITH as incorporator, authorized representative and statutory agent of the corporation. The location of the statutory agent is listed as 67782 Hoover Road, Quaker City, Ohio 43773. The corporation is currently active with the State of Ohio.

22. On or about August 19, 2015, SMITH opened a Huntington Bank FastTrack Business Checking Account ████4147. The bank account was opened for Top Secret Livstock, 67782 Hoover Road, Quaker City, Ohio 43773. SMITH signed the signature card as "Pres/Owner/CEO."

23. On or about September 28, 2015, SMITH was issued a Livestock Dealer's License by the Ohio Department of Agriculture. On the Application for Ohio Livestock Dealer's License, SMITH applied for a license under the corporate name of Top Secret Livestock and provided the address of the business as 67782 Hoover Road, Quaker City, Ohio 43773.

24. The property at 67782 Hoover Road, Quaker City, Ohio 43773, serves as both the corporate address for Top Secret Livestock as well as the residence of SMITH and his family.

25. On May 11, 2016, SMITH was personally served with a subpoena issued by the Grand Jury for the United States District Court for the Northern District of Ohio for records related to sales to members of the Salem Enterprise. The subpoena for records sought records

from both SMITH personally as well as from Top Secret Livestock. The production date for records was June 14, 2016. SMITH did not provide records responsive to the subpoena.

26. On May 19, 2016, at approximately 6:48 p.m., Salem contacted SMITH, at telephone ████5587. During the conversation, SMITH advised Salem he might make up bills to help Salem out. This was in response to SMITH receiving a grand jury subpoena issued by the United States District Court for the Northern District of Ohio for records relating to livestock purchases and sales to Salem.

27. On July 1, 2016, Tyler Faulk (Faulk), SMITH'S step-son, was served with a subpoena issued by the Grand Jury for the United States District Court for the Northern District of Ohio at Top Secret Livestock, 67782 Hoover Road, Quaker City, Ohio 43773. The subpoena was for SMITH to personally appear in before the Grand Jury of the Northern District of Ohio, on July 12, 2016 to produce records related to sales to members of the Salem Enterprise. The subpoena for records sought records from both SMITH personally as well as from Top Secret Livestock. On July 1, 2016, SMITH was advised telephonically that the subpoena was served on Faulk. SMITH and SA Robert Springer, USDA-OIG arranged for a meeting on July 5, 2016.

28. On July 5, 2016, SMITH left a voicemail message for SA Robert Springer, USDA-OIG (SA Springer) and advised that he was out of state and would not be meeting for an interview.

29. On July 8, 2016, SA Springer, contacted SMITH telephonically. SMITH stated "you don't command me to do anything". SMITH advised that he would not be coming to court on July 12, 2016 and would not help with the investigation. At the end of the phone call SMITH advised he would contact his bank to retrieve copies of checks responsive to the subpoena.

30. On July 12, 2016, SA Springer, contacted SMITH telephonically. SMITH advised that he contacted the bank and he needed three or four more days. SMITH advised that he did not want to comply with the subpoena. SMITH agreed to meet with SA Springer on July 15, 2016. SA Springer advised he would contact SMITH on July 14, 2016 to confirm the meeting on July 15, 2016.

31. On July 12, 2016, at approximately 11:47 a.m., SMITH contacted Salem and advised him that law enforcement has been hounding him about his records. SMITH and Salem then had the following conversation:

| | |
|---|---|
| SMITH: | [t]hey got the court involved now so |
| Salem: | What do you mean they got the court? |
| SMITH: | Ah they subpoenaed me |
| Salem: | They subpoenaed you |
| SMITH: | Yup |
| Salem: | Yeah for the records |
| SMITH: | Yup |
| Salem: | Oh I don't know yeah |
| SMITH: | I've been holding em off as long as I can |
| Salem: | Yeah try your best |
| SMITH: | Yup |
| Salem: ... | is any records showing for Mike how many he took |
| SMITH: | Just the checks...the cancelled checks |
| Salem: | The checks is not too many |
| SMITH: | Yeah |
| Salem: | You know |
| SMITH: | Yup |
| Salem: | About maybe a couple hundred |
| SMITH: | Yeah that's what I am going to show em I ain't showing em nothing else. |
| Salem: | Yeah |
| SMITH: | So |
| Salem: | Yeah couple of weeks yet when the court send you that send you subpoena |
| SMITH: | I was supposed to be there today and I told them I wasn't showing up. |

32. On July 14, 2016, SA Springer contacted SMITH telephonically. SMITH advised that he had not received records from the bank.

33. On July 15, 2016, SA Springer contacted SMITH telephonically. SMITH advised that he had not received records from the bank. SMITH agreed to meet on July 22, 2016.

34. On July 21, 2016, SA Springer attempted to contact SMITH telephonically and left a voicemail message for SMITH to return the call to confirm the meeting on July 22, 2016. SMITH did not return the telephone call.

35. On September 8, 2016, SA Springer attempted to contact SMITH telephonically and left a voicemail message for SMITH to return the call to set up a meeting. SMITH did not return the telephone call.

36. On September 19, 2016, SA Robert Wawrzyniak, USDA-OIG (SA Wawrzyniak) travelled to Top Secret Livestock, 67782 Hoover Road, Quaker City, Ohio 43773, to take photographs of the property in anticipation of a potential search warrant. After photographing the property, SA Wawrzyniak was followed and confronted by SMITH on the road near Top Secret Livestock. When SA Wawrzyniak attempted to depart from SMITH, SMITH and a second male, Faulk, blocked the road and would not allow SA Wawrzyniak to leave. SMITH blocked one direction of the road with his truck and Faulk blocked the road with his person and a metal pipe approximately four feet long. While SA Wawrzyniak's movement was restrained in his vehicle, SMITH contacted SA Springer telephonically. SMITH and SA Springer spoke telephonically for approximately 28 minutes until the Guernsey County Sheriff arrived on scene. During the conversation, SMITH stated "you don't understand I am not coming to court. This is harassment". SA Springer advised SMITH that SA Springer would like to resolve this situation. SA Springer advised SMITH that the individual's name was Robert and he was a federal agent.

11

SMITH advised that Robert showed him a badge but "you could get one of those from Wal-Mart". SA Springer notified SMITH that SA Springer was a federal agent and Robert was a federal agent and to let Robert go. SMITH advised that they had him blocked in and would not let him leave. SMITH advised that his son was blocking him with a pipe. SA Springer asked SMITH if he planned to hurt Robert. SMITH advised that he should take the sledge hammer and bash in the car. SMITH advised that he has a shotgun in the house and "he is lucky I don't shoot him". SMITH advised SA Springer he would only let Robert (i.e., SA Wawrzyniak) go if he turned over his camera and laptop he downloaded the pictures on. SMITH advised if SA Wawrzyniak turned over the camera and laptop he would burn them.

37. On September 19, 2016, at approximately 11:07 AM, SMITH advised SA Springer that the Sheriff had arrived. SMITH was overheard stating "drop the pipe the sheriff is here" at the end of the phone call.

38. On September 19, 2016, at approximately 12:45 PM, SMITH contacted SA Springer telephonically and stated "lucky I didn't have my sledgehammer the first time I walked up to the car" SMITH continued "he's lucky I didn't have time to go and get the gun out". SMITH advised SA Springer "remember, we live in the country we better armed" in response to the earlier confrontation with SA Wawrzyniak. SA Springer asked SMITH if the situation involving the records could be resolved. SMITH responded "I would say you pretty well blew that chance today". SMITH then stated "if I keep telling you I don't have records to give you and you don't believe me". SA Springer advised SMITH that he does have records and SA Springer knows SMITH has records. SMITH then stated "you lie to me, I lie to you". SMITH continued, "I'll bring the records, you bring the camera and the laptop" (regarding an earlier conversation when SMITH advised he would only let SA Wawrzyniak go if he turned over his

12

camera and laptop). At the end of the conversation, SMITH advised SA Springer he could meet him on Friday, September 23, 2016. SMITH then stated "I better not find you on my road again". When SA Springer asked SMITH what would happen if he was on the road, SMITH hung up the phone. SA Springer was at the USDA-OIG office, 201 E. Superior Avenue, #550, Cleveland, Ohio 44114 at the time of the phone call.

39. On September 23, 2016, at approximately 8:53 AM, SMITH arrived at the Guernsey County Sheriff's office to meet with SA Springer. When SA Springer and two Guernsey County Sheriff's deputies walked out to meet with SMITH, he sped off. SA Springer contacted SMITH telephonically and advised SMITH that he was not under arrest. SMITH repeatedly demanded SA Springer meet him alone in a Rite Aid parking lot. SA Springer advised SMITH that SA Springer would not meet him alone. SMITH advised SA Springer he knew what was going on and "someone's going to get shot today".

40. On September 23, 2016, at approximately 9:04 AM, SMITH returned to the Guernsey County Sheriff's Department parking lot. Faulk was in the passenger seat of the vehicle. SMITH and Faulk would not exit the vehicle. After a few minutes, SA Springer and the two deputies approached the vehicle. After approaching the vehicle SMITH stated "I told you I am not testifying I have done nothing wrong". After a few minutes SMITH agreed to come into the Guernsey County Sheriff's office to make copies of the records that he brought with him.

41. On September 23, 2016, at approximately 9:21 AM, SMITH, SA Springer and two Guernsey County Sheriff's deputies walked into Guernsey County Sheriff's Office. SMITH provided an orange folder containing records of his sales to Whiting and Abukhalil. Deputies with the Guernsey County Sheriff's Office made copies of the records in SMITH's presence and returned the orange folder back to him. After the records were returned to him SMITH stated

"that's all I got". SMITH stated that he counted them and he sold them 525 heads of sheep that are all represented in the records he provided. SMITH advised that he deposited all of the checks into the same bank account.

42. While at the Guernsey County Sheriff's office SMITH stated "I think I was within my right to rip him out of the car and beat him" in regards to the confrontation with SA Wawrzyniak. SMITH advised that Faulk was the one with the pipe and SMITH instructed Faulk to do it. SMITH then asked SA Springer what he would have done. SA Springer responded "when he notified himself as a federal agent I would have let him go". SMITH responded "I didn't believe him". SA Springer pointed out to SMITH that SMITH had called SA Springer during the incident and talked to SA Springer for approximately 30 minutes. During the conversation, SA Springer advised SMITH that he, SA Springer was a federal agent, and SA Wawrzyniak was also a federal agent. SMITH responded "by then he pissed me off and it didn't matter". SMITH departed with the orange folder containing the records photocopied at approximately 9:36 AM.

43. A review of the records provided by SMITH revealed invoices from Mt. Hope Auction totaling approximately $61,680.52. SMITH provided copies of ten (10) cancelled checks which totaled approximately $60,220.09. All ten (10) checks were written out of the Bellaire Gas USA ATM PNC Bank account 1964, a bank account controlled by the Salem Enterprise.

44. A review of Huntington Bank FastTrack Business Checking Account 4147, the bank account in the name of Top Secret Livestock, 67782 Hoover Road, Quaker City, Ohio 43773, revealed fifteen (15) checks were deposited into the account between on or about September 22, 2015 and on or about March 10, 2016 from bank accounts in the name

14

of Sanah Salem, Amin Salem's wife, and Salem businesses. One check was signed by Sanah Salem from a personal checking account with Citizens Bank, #4523718694; thirteen (13) checks were signed either Mo Salem or M Salem from a corporate PNC Bank account #4273531964, in the name of Bellaire Gas USA ATM Account; and one check was signed by Mo Salem from a corporate Fifth Third Bank account ████2631, in the name of Ronnie's Marathon Inc. DBA Henry's Marathon. The total amount of the fifteen (15) checks was $92,395.49.

45. The difference between the checks deposited into the Top Secret Livestock Huntington Bank account ████4147 and the copies of cancelled checks produced by SMITH on September 23, 2016, equals approximately $32,175.40. SMITH underreported the amount of sales to the Salem Enterprise by at least $32,175.40.

## CONCLUSION

46. Based upon your Affiant's training and experience, experience in this investigation and as set forth in paragraphs 7 through 45 of this affidavit, it is your Affiant's belief that probable cause exists to believe that in the Northern District of Ohio; JESSE M. SMITH, did knowingly violate federal laws, specifically 18 U.S.C. § 1510 – Obstruction of Justice and 18 U.S.C. § 875(c) – Threat-Interstate Communications.

## REQUEST FOR SEALING

47. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application. Your Affiant submits and believes that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organization as not all of the targets of this investigation will be arrested at this time. Based upon my training and experience, I have learned that, criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other co-conspirators as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

ROBERT SPRINGER
Special Agent
USDA-OIG/TFO FBI

Subscribed and sworn to before me on November __, 2016.

**MAG. JUDGE RUIZ**

UNITED STATES MAGISTRATE JUDGE